J. S66045/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :      IN THE SUPERIOR COURT OF
                                   :             PENNSYLVANIA
               v.                    :
                                     :
IVAN BOLSHAKOV,                    :          No. 1063 EDA 2018
                                     :
              Appellant         :

Appeal from the Judgment of Sentence, March 5, 2018,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0001834-2017

BEFORE:  GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 23, 2019**

Ivan Bolshakov appeals from the March 5, 2018 judgment of sentence entered in the Court of Common Pleas of Delaware County after a jury convicted him of simple assault, retail theft, and possession of drug paraphernalia.[1] The trial court sentenced appellant to a term of incarceration of one day to two years less one day on the simple assault conviction, followed by a two-year probationary term for the remaining convictions.[2] We affirm.

The trial court set forth the following:

> Ashai Mathurin had been employed by Rite Aid as a
> Loss Prevention agent for about four years at the time
> of the incident. On February 8, 2017, in the early

---

[1] 18 Pa.C.S.A. §§ 2701(a)(4) and 3929(a)(1), and 35 P.S. § 780-113(a)(32), respectively.

[2] We note that at the time of sentencing, the trial court found appellant eligible for parole and immediately paroled appellant.

afternoon hours, he was working at the Rite Aid on 69th Street in Upper Darby. On that day, he observed [appellant] come into the store with a backpack and conceal random items in his backpack in a cart. While still in the store, Mr. Mathurin confronted [appellant] and asked him why he was stealing. [Appellant] responded in English saying he was sorry and asking Mr. Mathurin not to call the police. Mr. Mathurin then escorted [appellant] to the loss prevention office to fill out an external loss prevention incident report. [Appellant] claimed to have no identification. As a result, Mr. Mathurin was not able to identify [appellant] to complete the report. As part of that process, Rite Aid generated a receipt for the items that were in [appellant's] backpack. The receipt came to a total of $109.13. Mr. Mathurin then called the Upper Darby Police to report the incident.

Officer Francis Devine is employed by the Upper Darby Township Police Department as a patrolman. He received a call to respond to the Rite Aid store at 123 South 69th Street. Officer Devine was informed that loss prevention had a cooperative subject in custody and they needed assistance with identifying the subject for their paperwork. When Officer Devine arrived at this Rite Aid, he made contact with a loss prevention officer who directed him to the manager's office. He advised Officer Devine they had a subject that passed all points of sale and took numerous items. The Rite Aid employees were trying to complete their in-house paperwork and had no way of identifying the subject. So they asked Officer Devine if he could obtain the subject's identity through the police database. The loss prevention officer then directed Officer Devine to [appellant]. Officer Devine asked [appellant] his name, date of birth, and his address. [Appellant] apologized for taking the items. Officer Devine advised [appellant] that he was there to check on his identification and that it was his belief Rite Aid just was going to bar him from the store. [Appellant] provided Officer Devine with a name and date of birth. Officer Devine ran the information through NCIC[,] and it came back with no record found. Officer Devine concluded that either

[appellant] has never been through the system or the information [appellant] provided was fraudulent. During their conversation, [appellant] was responding in English. Officer Devine believed [appellant] understood everything he asked him. During the conversation[, appellant] indicated he was sorry and regretted committing a theft. He further stated he was from a different country. He also told the officer that he has a wife and a 6-year-old daughter and that he was embarrassed he would do this to them. Their conversation in English lasted for a couple minutes. After Officer Devine determined he couldn't verify the identifying information [appellant] was providing him, he advised [appellant] he was going to be handcuffed and brought to the police station for purposes of identification. [Appellant] then stood up, put his hands behind his back and allowed Officer Devine to place handcuffs on him. Officer Devine observed that [appellant] was complying with everything he asked him to do. Officer Devine believed [appellant] fully understood everything being said to him.

It is Upper Darby Township Police Department policy that everyone who is placed into custody or is transported in a police car is patted down for weapons. It is Officer Devine's practice every time he makes an arrest or transports an individual to ask them if they have anything on them he should worry about. He asks the same question each time; "Do you have any drugs, guns, bombs, bodies, any knives, weapons, anything that's going [to] poke me, stick me, or hurt me." Officer Devine asked [appellant] the same question in this case. [Appellant] replied that he had nothing on him that would hurt Officer Devine. Officer Devine then began a pat down of [appellant]. [Appellant] had a large puffy down feather type jacket with two large pockets in the front that were buttoned together. Officer Devine could tell from the outside that something was in the pockets. Officer Devine started to undo the button to look inside the pocket. When Officer Devine grabbed the fabric of the jacket, he felt a puncture in his hand. Officer Devine looked down and saw an uncapped hypodermic needle sticking out of the fabric. Officer Devine then took a

knife out and cut the pocket open. Inside the pocket[,] he recovered a used hypodermic needle, as well as a metal bottlecap that had an off-white residue and cotton inside of it. After being stabbed by the needle, Officer Devine sat [appellant] back down while he was handcuffed and went into the Rite Aid and took a bottle of rubbing alcohol and began cleaning his hands. Officer Devine then requested additional officers to come to continue handling the scene. Officer Devine later took himself to the hospital for exposure treatment.

Officer John Millison is employed by the Upper Darby Township Police Department as a Patrolman. Officer Millison responded to the Rite Aid to assist Officer Devine. Officer Millison took custody of [appellant] while Officer Devine went to the hospital. Officer Millison was present while the loss prevention officer was talking to [appellant]. The loss prevention officer was asking [appellant] his name and all the other questions on the loss prevention form. [Appellant] responded to each question in English. At no time during the conversation did [appellant] indicate he didn't understand English or that he needed an interpreter.

Officer Charles Peterson is employed by the Upper Darby Township Police Department as a Patrolman. He transported [appellant] to the police station. Prior to the transport, Officer Peterson explained to [appellant] what he was doing and that he was patting him down again. During this time[, appellant] was answering questions and talking to Officer Peterson in English. At no time did [appellant] indicate he could not understand. At the [p]olice station[,] Officer Peterson continued to speak with [appellant] in English. Officer Peterson asked [appellant] for biographical information. [Appellant's] responses were appropriate and responsive to Officer Peterson's inquiries. Officer Peterson had a back-and-forth conversation with [appellant] while he was in the holding cell about consenting to a blood draw. [Appellant] responded he didn't think there was anything wrong with his blood but agreed to the blood

draw. Eventually[, appellant] was transported to the hospital for a blood draw. At the hospital[, appellant] stayed in Officer Peterson's custody the entire time. Officer Peterson witnessed the medical staff talking to [appellant] about his medical history. The medical staff spoke with [appellant] in English. [Appellant] responded to their questions in English. [Appellant] was in the hospital for an hour and a half. When the medical staff was not speaking with [appellant], Officer Peterson was. At no time did [appellant] ask for assistance with interpretation. At no time during their hour conversation did Officer Peterson believe [appellant] could not understand him or had trouble understanding the English language.

Trial court opinion, 5/30/19 at 2-7 (citations to notes of testimony omitted).

The record reflects that following imposition of sentence, appellant did not file post-sentence motions. Appellant did, however, file a timely notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In lieu of filing a Rule 1925(b) statement, and in accordance with Pa.R.A.P. 1925(c)(4), counsel filed a statement of intent to file an **Anders** brief.[3] The trial court then filed a Rule 1925(a) opinion stating that it did not identify any issue of arguable merit, but that in accordance with **Anders** procedure, it would await this court's determination. (Trial court opinion, 6/26/18 at 2.)

Following this court's review of counsel's **Anders** brief and petition to withdraw, we concluded that counsel failed to comply with **Anders** and denied counsel's petition. **Commonwealth v. Bolshakov**, No. 1063 EDA 2018,

---

[3] **Anders v. California**, 386 U.S. 738 (1967); **see also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

unpublished memorandum (Pa.Super. filed February 6, 2019). We instructed counsel to file either a compliant *Anders* brief or an advocate's brief within 30 days, at which time we afforded the Commonwealth 30 days to respond. Appellant's counsel timely filed an advocate's brief, and the Commonwealth filed a timely response. In his brief, appellant raises the following issue:

> The Commonwealth failed to produce sufficient evidence that [appellant] committed the offense of Simple Assault pursuant to 18 Pa.C.S.[A.] § 2701(a)(4) because the circumstances of the case and his limited understanding of the English language raises doubt that he had the requisite *mens rea* to intentionally or knowingly commit the acts charged.

Appellant's brief at 7.

At the time this court received counsel's advocate's brief, we did not have the benefit of the trial court's reasoning in relation to the sufficiency of the evidence challenge that appellant raises. We, therefore, remanded this case for the trial court's preparation of a Rule 1925(a) opinion. We have received the trial court's Rule 1925(a) opinion and are now able to address appellant's sufficiency challenge on the merits.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Pappas***, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted).

Under the Crimes Code, a person is guilty of assault if he "conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer . . . during the course of an arrest or any search of the person." 18 Pa.C.S.A. § 2701(a)(4).

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2).

Appellant claims that the Commonwealth failed to prove that appellant knowingly penetrated Officer Devine because appellant's "limited

understanding of the English language suggest [sic] that he did not understand what Officer Devine was saying to him" and "the fact the syringes were on his person, even if recalled that they were, does not suggest [penetration] was practically certain." (Appellant's brief at 20.)

In addressing appellant's claim, the trial court explained that

> [f]our witnesses testified they interacted with [appellant] in English. Each witness stated that at no time did [appellant] ask for assistance with interpretation. Each witness believed [appellant] understood them and had no trouble responding appropriately to their questions in English. From this testimony the jury concluded [appellant] understood Officer Devine's instructions and made a knowing decision not to disclose to Officer Devine he had a hypodermic needle in his pocket.

Trial court opinion, 5/30/19 at 9-10.

Clearly, the evidence was sufficient to demonstrate that appellant understood the English language and knowingly decided against informing Officer Devine that appellant had a hypodermic needle in his pocket. Additionally, the evidence was sufficient to demonstrate that as a result of appellant's knowing decision not to disclose to Officer Devine that appellant had a hypodermic needle in his pocket immediately before Officer Devine searched appellant's person, appellant was aware that it was practically certain that his decision would result in Officer Devine being penetrated by the hypodermic needle.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, it was sufficient to enable the fact-finder to find appellant

guilty of assault beyond a reasonable doubt because it demonstrated that appellant knowingly penetrated Officer Devine with a hypodermic needle during the officer's search of appellant's person.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/19